Filed 12/17/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MASSOUD YASHOUAFAR et al., <br><br> Defendants and Appellants. | B249057 <br><br> (Los Angeles County <br> Super. Ct. No. BC466344) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rita Miller, Judge. Reversed and remanded.

Krane & Smith, Marc Smith, Cynthia R. Hodes, for Defendants and Appellants Massoud Yashouafar and Solyman Yashouafar.

Jeffer Mangels Butler & Mitchell, Robert B. Kaplan, Neil C. Erickson, and Thomas M. Geher, for Plaintiff and Respondent.

# INTRODUCTION

Plaintiff and respondent U.S. Bank National Association[1] brought an action to enforce a Guaranty and Indemnity Agreement (Guaranty) that defendants and appellants Massoud Yashouafar and Solyman Yashouafar signed in favor of plaintiff's predecessor-in-interest for the outstanding obligations owed by the borrowers on a promissory note (Note).  The trial court granted plaintiff's motion for summary judgment.  On appeal, defendants contend that the trial court used the wrong date in calculating a prepayment fee (or Yield Maintenance Amount) for borrowers' prepayment of the Note's indebtedness.  Alternatively, defendants argue that if the trial court used the correct date in calculating the prepayment fee, then the prepayment fee was an unenforceable penalty.

We hold that even though the legal issue was not raised before the trial court, the documents should be interpreted so that the prepayment obligation only accrues upon payment and not on acceleration of the Note.  Accordingly, we reverse and remand the matter to the trial court for a recalculation of the prepayment fee, if any.

---

[1]     Plaintiff is fully identified as U.S. Bank National Association, As Trustee, as successor-in-interest to Bank of America, National Association, as successor by merger to Lasalle Bank National Association, as Trustee for the Registered Holders of 2006-CD3 Commercial Mortgage Pass-Through Certificates, acting by and through J.E. Robert Company, Inc., its Special Servicer.

In 2006, Figueroa Tower I, Figueroa Tower II, and Figueroa Tower III (Borrowers) executed the Note in favor of German American Capital Corporation (GACC) in the principal sum of $62,000,000.  The Note had a maturity date of August 1, 2016.  To secure repayment of their debt to GACC under the Note, Borrowers, as trustors, executed in favor of Chicago Title Company, as trustee, a "Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing" (Deed of Trust)[3] for the benefit of GACC with respect to the real property security—the Trust Property—which included certain real property located in Los Angeles County.  Defendants executed in favor of GACC the Guaranty pursuant to which they agreed to guarantee payment of, among other things, "all obligations, requirements, and indemnities of Borrowers under the Loan Documents."  Ultimately, through various assignments and a merger with another bank, plaintiff became the holder of the Loan Documents.

### A.    Section 3(b) of the Note

Section 3(b) of Note provides:

"Except as provided in Section 3(a)(1) above, if for any reason the indebtedness evidenced by this Note ('Debt') is prepaid at any time (which prepayment Payee may, in its sole and absolute discretion, prohibit subject to Section 3(a) above), including without

---

[2]    In ruling on plaintiff's summary judgment motion, the trial court did not find any triable issues of material fact—i.e., it implicitly rejected defendants' claimed disputed facts.  Defendants do not contend on appeal that the trial court erred in failing to find triable issues of material fact.  Accordingly, our Background relies, in part, on facts set forth in plaintiff's separate statement of undisputed material facts in support of its motion for summary judgment whether or not defendants disputed such facts before the trial court.

[3]    The parties refer to the Note, Deed of Trust, Guaranty, and other loan documents not relevant to this appeal as the "Loan Documents."

limitation any prepayment which occurs after such indebtedness shall have been declared due and payable by Payee pursuant to the terms of this Note or the provisions of any other Loan Document due to a default by Maker, then there shall also then be immediately due and payable, a prepayment fee equal to the premium described in Section 12.4(c) of the Security Instrument, without regard to any prepayment prohibition. In the event that any prepayment fee is due hereunder, Payee shall deliver to Maker a statement setting forth the amount and determination of the prepayment fee, and provided that Payee shall have in good faith applied the formula described in Section 12.4(c) of the Security Instrument, Maker shall not have the right to challenge the calculation or the method of calculation in the absence of manifest error.  Maker hereby expressly (i) waives any rights it may have under California Civil Code Section 2954.10 to prepay this Note, in whole or in part, without penalty, upon acceleration of the maturity of this Note, and (ii) agrees that if a prepayment of any or all of this Note is made, following any acceleration of the maturity of this Note by the holder hereof on account of any transfer or disposition as prohibited or restricted by the Security Instrument, then Maker shall be obligated to pay, concurrently therewith, as a prepayment fee, the applicable sum specified in the Security Instrument.  By initialing this provision in the space provided below, the undersigned hereby declares that Payee's agreement to make the subject loan at the interest rate and for the term set forth in this Note constitutes adequate consideration, given individual weight by the undersigned, for this waiver and agreement."

   B. *Relevant Provisions of the Deed of Trust*

  In Article XII—Payment, Defeasance, Prepayment—of the Deed of Trust, section 12.4(c) provides:

  "If the indebtedness evidenced by the Note shall have been declared due and payable by Beneficiary pursuant to the terms thereof or the terms hereof or the provisions of any other Loan Document due to a default by Grantor, then there shall also then be immediately due and payable, a prepayment fee in an amount equal to the greater of (A)

five percent (5%) of the then outstanding principal balance of the Note on the date of acceleration (the 'Tender Date'), and (B) the Yield Maintenance Amount (as defined below) (provided, however, that if the Tender Date is after the Lockout Date (as defined below), the prepayment fee shall be in an amount equal to the greater of (A) two percent (2%) of the then outstanding principal balance of the Note on the Tender Date, and (B) the Yield Maintenance Amount). In the event that any prepayment fee is due hereunder, Beneficiary shall deliver to Grantor a statement setting forth the amount and determination of the prepayment fee, and provided that Beneficiary shall have in good faith applied the formula described above, Grantor shall not have the right to challenge the calculation or the method of calculation set forth in any such statement in the absence of manifest error."

In Article XV—Remedies—of the Deed of Trust, section 15.1 provides in relevant part:

"Remedies Available  If there shall occur an Event of Default under this Deed of Trust, then this Deed of Trust is subject to foreclosure as provided by law and Beneficiary may, at its option and by or through a trustee, nominee, assignee or otherwise (including, without limitation, the Trustee), to the fullest extent permitted by law, exercise any or all of the following rights, remedies and recourses, either successively or concurrently:

"(a)    Acceleration.  Accelerate the maturity date of the Note and declare any or all of the Debt to be immediately due and payable without any presentment, demand, protest, notice or action of any kind whatever (each of which is hereby expressly waived by Grantor), whereupon the same shall become immediately due and payable.  Upon any such acceleration, payment of such accelerated amount shall constitute a prepayment of the principal balance of the Note and any applicable prepayment fee provided for in the Note shall then be immediately due and payable."

In Article XVI—Miscellaneous Terms and Conditions—of the Deed of Trust, section 16.14 provides:

5

"Inconsistency with Other Loan Documents  In the event of any inconsistency between the provisions hereof and the provisions in any of the other Loan Documents, it is intended that the provisions of the Note shall control over the provisions of this Deed of Trust, and that the provisions of this Deed of Trust shall control over the provisions of the Assignment of Leases and Rents, the Environmental Indemnity Agreement and the other Loan Documents."

### C.      Relevant Provision of the Guaranty

Section 2 of the Guaranty provides that defendants "unconditionally and irrevocably guarantee[] payment of the entire Debt if any of the following occurs after the date hereof:  (i) a voluntary bankruptcy filing by, or an involuntary bankruptcy filing against, Borrower or any general partner or managing member or majority shareholder of Borrower; or (ii) the Property becomes an asset in any bankruptcy proceeding."

### D.      Borrowers' Default, Plaintiff's Complaint, and Plaintiff's Motion for Summary Judgment

On June 24, 2011, plaintiff's counsel sent Borrowers a letter contending that they had defaulted under the Loan Documents by their failure to make various required payments.  Plaintiff's counsel wrote, "As a result of the occurrence of the forgoing Event of Default, the Trustee hereby accelerates the Debt due and owing by the Borrower to the Trust payable pursuant to the Secured Loan Documents and declares such Debt to be immediately due and payable.  Please further be advised that from and after June 24, 2011, interest shall accrue on the outstanding principal balance of the Loan due and owing to the Trust at the Default Rate.  [¶]  Demand is hereby made upon the Borrower by the Trustee to pay to the Trust the fully accelerated Debt due and owing pursuant to the Secured Loan Documents on or before July 1, 2011."

Plaintiff filed a complaint against defendants for breach of the Guaranty.  Plaintiff alleged that Borrowers defaulted under the Loan Documents; that plaintiff had accelerated payment of the Note's indebtedness on June 24, 2011, due to Borrowers'

6

default; and that plaintiff performed its obligations under the Note. Plaintiff further alleged that defendants entered into the Guaranty pursuant to which they agreed to guarantee payment of all of Borrowers' "obligations, requirements, and indemnities" under the Loan Documents. Plaintiff also alleged that Borrowers filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code on July 14, 2011. Among other things, plaintiff sought damages of the principal balance of $62,000,000 and certain other charges, fees, and interest due under the Loan Documents.

Plaintiff filed a summary judgment motion arguing that there were no triable issues of material fact concerning Borrowers' default under the Loan Documents and defendants' liability for Borrowers' default under the Guaranty. Defendants opposed the summary judgment motion, claiming that they were permitted to assert claims and defenses that the Borrowers could have asserted; their failure to pay under the note was excused by plaintiff's breach of the loan agreement, plaintiff's breach of the implied covenant of good faith and fair dealing, and plaintiff's grossly negligent loan administration; and that plaintiff lacked standing to pursue the claims it asserted. The trial court granted plaintiff's summary judgment motion and entered judgment in the total amount of $81,850,619.33, which sum included a "Yield Maintenance Amount"—i.e. a prepayment fee—of $14,007,811.30.

## DISCUSSION

For the first time on appeal,[4] defendants contend that the trial court erred in calculating the prepayment fee from the date of plaintiff's counsel's June 24, 2011, letter

---

**4**    Plaintiff does not contend that defendants forfeited this issue by failing to raise it in the trial court. We may consider legal issues on appeal not raised before the trial court presented on undisputed facts. (*Woodward Park Homeowners Assn., Inc. v. City of Fresno* (2007) 150 Cal.App.4th 683, 712-714.)

7

to Borrowers that accelerated payment of the Note's indebtedness.[5] Defendants contend that the Note provides for a prepayment fee when Borrowers actually prepay the Note's indebtedness and not when plaintiff declares the Note due and payable, accelerating the amounts payable under the Note. Defendants contend that Borrowers did not prepay the note until January 24, 2013, when, they claim, plaintiff purchased the Figueroa Towers at a foreclosure sale for a full credit bid.[6] In the alternative, defendants contend that if the prepayment fee was due under the Loan Documents upon acceleration on June 24, 2011, then the prepayment fee was an unenforceable penalty.

### A.       Standard of Review and Rules of Interpretation

We review de novo a trial court's grant of summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) "On appeal from a summary judgment, the reviewing court is not bound by the trial court's construction of a contract where that construction was not based on the credibility of conflicting extrinsic evidence as to which the trial court was in a better position to form a judgment. Thus, where there is no extrinsic evidence, where the extrinsic evidence is not conflicting or where the conflicting evidence is of a written nature only, the reviewing court is not bound by the rulings of the trial court but rather must make an independent interpretation of the written contract. [Citations.]" (*Milazo v. Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1534.) Although plaintiff asserts there is parol evidence on the interpretation of the documents, there is no extrinsic conflicting evidence.

---

[5]       As noted, defendants do not contend that the trial court erred in failing to find a triable issue of material fact. Nor do they challenge the trial court's determination that their liability was triggered under the Guaranty and that they were liable to plaintiff for the principal sum of $62,000,000 and certain other charges, fees, and interest.

[6]       Defendants do not provide evidence of this purported sale, which, by defendants' account, took place after the trial court heard and ruled on plaintiff's summary judgment motion, but before it entered judgment.

8

As the Supreme Court said, "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (*id.,* § 1644), controls judicial interpretation. (*Id.,* § 1638.)' [Citations.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) "Courts will not strain to create an ambiguity where none exists. [Citation.]" (*Id.* at pp. 18-19.) "'If contractual language is clear and explicit, it governs.' [Citations.]" (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390.)

### B.    Application of Relevant Principles

Section 3(b) of Note specifies that a prepayment fee was not due unless and until the Note's indebtedness was prepaid. That section provides that "if for any reason the indebtedness evidenced by this Note ('Debt') *is prepaid* at any time . . . including without limitation any prepayment which occurs after such indebtedness shall have been declared due and payable by Payee pursuant to the terms of this Note or the provisions of any other Loan Document due to a default by Maker, *then* there shall also then be immediately due and payable, a prepayment fee . . . ." (Italics added.)

Section 12.4(c) of the Deed of Trust, on the other hand, provides that if the Note's indebtedness was declared due and payable, then the prepayment fee was due immediately. That section states that "[i]f *the indebtedness evidenced by the Note shall have been declared due and payable by Beneficiary* pursuant to the terms thereof or the terms hereof or the provisions of any other Loan Document due to a default by Grantor, *then there shall also then be immediately due and payable, a prepayment fee . . . ."* (Italics added.) Yet, another provision of the Deed of Trust—the acceleration provision

9

in Section 15.1(a)—is consistent with section 3(b) of the Note. Section 15.1(a) of the Deed of Trust provides that if plaintiff accelerated the Note's maturity date and declared the Note's indebtedness immediately due, "*payment* of such accelerated amount *shall constitute a prepayment of the principal balance of the Note and any applicable prepayment fee* provided for in the Note *shall then* be immediately due and payable."

Section 3(b) of the Note, which states that a prepayment fee is due after the Note's indebtedness has been prepaid, is inconsistent with section 12.4(c) of the Deed of Trust (even if not with section 15.1(a) of the Deed of Trust), which states that the prepayment fee is due if plaintiff declares the Note's indebtedness due and payable. Under section 16.14 of the Deed of Trust, any inconsistency between the Note and the Deed of Trust is resolved in favor of the section 3(b) of the Note. Section 16.14 states that "[i]n the event of any inconsistency between the provisions hereof and the provisions in any of the other Loan Documents, it is intended that the provisions of the Note shall control over the provisions of this Deed of Trust . . . ." Accordingly, no prepayment penalty was due until defendants prepaid the Note's indebtedness and any prepayment fee should not be calculated based on the June 24, 2011, letter from plaintiff's counsel accelerating payment of the Note's indebtedness. (See *United State Bank Nat. Assn. v. South Side House, LLC* (2012 E.D.N.Y.) 2012 U.S. Dist. LEXIS 10824, \*23 ["Where, as here, the Note and Mortgage do not unambiguously require a prepayment premium upon acceleration and default, a claim for prepayment consideration must be disallowed"]; see also *In re MPM Silicones, LLC* (Bankr. S.D.N.Y. 2014) 2014 Bankr. LEXIS 3926; *In re Bowles Sub Parcel A, LLC* (Bankr. D. Minn. 2013) 2013 Bankr. LEXIS 5524; *In re LaGuardia Associates, L.P.* (Bankr. E.D. Pa. 2012) 2012 Bankr. LEXIS 5612; *In re Premier Entertainment Biloxi LLC* (Bankr. S.D. Miss. 2010) 445 B.R. 582, 627; *In re Solutia Inc.* (Bankr. S.D.N.Y. 2007) 379 B.R. 473, 488.)

Plaintiff contends that the sections can be harmonized because the provisions deal with two scenarios—the borrower actually prepaying and the acceleration of the note. But the provision of the Note requiring that the "indebtedness" be "prepaid" specifically includes a requirement for a prepayment fee for any prepayment, including following an

acceleration of the amount due. Thus, the Note refers to a "prepayment which occurs after such indebtedness shall have been declared due and payable by Payee pursuant to the terms of this Note or the provisions of any other Loan Document due to a default by Maker."

Plaintiff also argues that there is no inconsistency between section 3(b) in the Note and section 12.4(c) in the Deed of Trust and thus section 16.14 of the Deed of Trust does not apply because section 4(c) of the Note provides that plaintiff's remedies as set forth in the Deed of Trust are "cumulative and concurrent" and section 15.6 of the Deed of Trust states that all of the remedies "contained in this Deed of Trust are cumulative and Beneficiary shall have all of the other remedies provided at law and in equity or in any other Loans Documents," including the Note. Section 4(c) of the Note and section 15.6 of the Deed of Trust simply define the range of remedies available to plaintiff. They do not address how inconsistencies between such remedies are resolved. Section 16.14 of the Deed of Trust—which provides that when there is a conflict between the provisions of the Note and the provisions of the Deed of Trust the provisions of the Note control—addresses such inconsistencies.

Plaintiff contends that California courts and other "sophisticated commercial jurisdictions" have held that a creditor can recover a prepayment fee upon a loan default even if there was no actual prepayment of the loan—i.e. that section 12.4(c) of the Deed of Trust is a valid and enforceable contract term. Defendants do not argue, and we do not hold here, that a creditor can recover a prepayment fee upon a loan default only when there has been an actual prepayment of the loan.[7] Instead, defendants argue, and we hold, that under the clear and explicit terms of the Note and Deed of Trust at issue in this case, no prepayment fee was due until defendants actually prepaid the Note's indebtedness.

---

[7] See generally Stark, *New Developments in Enforcing Prepayment Charges After an Acceleration of a Mortgage Loan* (1991) 26 Real Prop. Prob. & Tr. J. 213; Nation, *Prepayment Fees in Commercial Promissory Notes: Applicability to Payments Made Because of Acceleration* (2005) 72 Tenn. L.Rev. 613.

11

Because we hold that the wrong date was used in calculating the prepayment fee, we need not reach defendants' alternative claim that the prepayment fee constituted an unenforceable penalty if the date used—i.e., the date of acceleration—had been the correct date for calculating the prepayment fee under the Loan Documents. Nor do we need to reach defendants' contention that the waivers in the Guaranty were ineffective to waive that claim by defendants. The waivers do not concern the application of the language of the Note to the events here, but rather concern certain statutory and suretyship rights. We reverse the judgment and remand the matter to the trial court to determine if and when Borrowers prepaid the Note's indebtedness and to calculate the legally obligated prepayment fee, if any, accordingly.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court to determine if and when Borrowers prepaid the Note's indebtedness and to calculate the legally obligated prepayment fee, if any, accordingly. Defendants are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**

MOSK, Acting P. J.

We concur:

KRIEGLER, J.

GOODMAN, J.*

---

\* Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.